NOT FOR PUBLICATION                                              CLOSED

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| TEAMSTERS-EMPLOYERS LOCAL 945 PENSION FUND, | : <br> : Hon. Faith S. Hochberg <br> : |
| and | : Civil No. 11-902 (FSH) <br> : |
| TRUSTEES OF TEAMSTERS-EMPLOYERS LOCAL 945 PENSION FUND, | : **OPINION & ORDER** <br> : <br> : Date: June 2, 2011 |
| Plaintiffs, | : |
| v. | : |
| WASTE MANAGEMENT OF NEW JERSEY, INC., | : |
| Defendant. | : |

**HOCHBERG, District Judge:**

This matter comes before the Court on Defendant's Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court has reviewed the parties' submissions pursuant to Federal Rule of Civil Procedure 78.

## BACKGROUND[1]

Plaintiff Teamsters-Employers Local 945 Pension Fund (the "Fund") is a Taft-Hartley trust fund established and maintained pursuant to the Labor Management Relations Act. The

---

[1] The facts set forth here are drawn from the Complaint. At the motion to dismiss stage, this Court accepts these facts as true. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Fund provides retirement and related benefits to eligible participants and beneficiaries. The Plaintiff Trustees of the Fund are equally selected by Teamsters Local Union No. 945 and contributing employers.

According to the Complaint, Defendant Waste Management of New Jersey, Inc. entered into a collective bargaining agreement with the Union which was effective from July 1, 2004 through June 30, 2009 (the "2004 CBA"). Under the 2004 CBA, Waste Management was required to contribute to the Fund on behalf of some of its employees.

The Fund has determined that Waste Management incurred partial withdrawal liability in the principal amount of $26,637,834.

On June 2, 2010, Waste Management received a notice of this liability and a demand for payment issued by the Fund. On July 30, 2010, Waste Management submitted a request for review of the partial withdrawal liability pursuant to Section 4219(b)(2)(A) of ERISA. The Fund responded on November 24, 2010.

Under Section 4221(a)(1) of ERISA, either the employer or the plan sponsor may initiate arbitration within a period of 60 days following the earlier of the date of notification to the employer of the plan sponsor's response to the review request <u>or</u> 120 days after the date of the employer's request for review.

On November 29, 2010, Waste Management sent a letter to the Fund seeking to initiate arbitration pursuant to the regulations promulgated by the Pension Benefit Guaranty Corporation (the "PBGC"). On December 8, 2010, counsel for the Fund suggested that the parties agree to "conduct an arbitration between them over the Partial Withdrawal Liability in accordance with

the [American Arbitration Association] Rules."[2]  Counsel for Waste Management accepted this suggestion in an e-mail dated December 10, 2010.

On December 14, 2010, Waste Management – in an e-mail sent to Claire Connelly, an Assistant Supervisor at the AAA –  filed a demand for arbitration with the AAA.  In an e-mail dated December 17, 2010, Connelly advised Waste Management that the administrative fee for the arbitration would be $8,250.  Connelly's e-mail further advised that "'the administrative fee of the AAA is based upon the amount in dispute as disclosed when the claim is filed and *is due and payable at that time*.  Accordingly, upon receipt of payment for the filing fee, the AAA will proceed with administration of this matter.'"[3]

The Complaint alleges that the AAA received the required fee from Waste Management on February 3, 2011.  Plaintiffs contend that this payment occurred eleven days after the deadline for initiating arbitration under Section 422(a)(1) of ERISA.

On the basis of this allegedly late initiation of arbitration, Plaintiffs assert claims under the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA") and the Declaratory Judgment Act.

## DISCUSSION

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[2]  Cmplt. ¶ 27.

[3]  Cmplt. ¶ 34 (quoting Connelly e-mail) (emphasis in the original).

misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

While courts must generally accept Plaintiff's factual allegations as true, they are also entitled to consider documents "integral to" the complaint.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  Additionally, courts may review documents explicitly relied on or incorporated by reference in the pleading.  Id.

The MPPAA regulates multiemployer pension plans. "'Congress enacted [the] MPPAA in particular because it found that existing legislation 'did not adequately protect plans from the adverse consequences that resulted when individual employers terminated their participation in, or withdrew from, multiemployer plans.''" Doherty v. Teamsters Pension Trust Fund, 16 F.3d 1386, 1388 (3d Cir. 1994) (quoting Flying Tiger Line v. Teamsters Pension Trust Fund, 830 F.2d 1241, 1243 (3d Cir. 1987) (quoting Pension Benefit Guar. Corp. v. R.A. Gray & Co., 467 U.S. 717, 722 (1984))).  The MPAA "sets rules for determining responsibility for a plan's unfunded liabilities when an employer withdraws from the plan, and for collecting such liability." Doherty, 16 F.3d at 1388.

In Doherty, the Third Circuit set forth the procedures outlined in the MPPA for assessment of withdrawal liability:

> When an employer withdraws from a multiemployer pension fund, it is liable for a pro rata share of the unfunded benefits the plan owes the employees....The plan sponsor calculates withdrawal liability, notifies the employer, and demands payment. The employer may request that the plan sponsor review its determination, and, if the review is unsatisfactory or not timely,  may initiate arbitration within a set period of time. If no arbitration proceeding is initiated within the time limit..."the amounts demanded by the plan sponsor...shall be due and owing."

4

Id. at 1388 (quoting 29 U.S.C. § 1401(b)(1)).

The issue at the heart of the instant case is whether Waste Management timely initiated arbitration.

Waste Management contends that it timely initiated arbitration on November 29, 2010, pursuant to the PBGC regulations. These regulations were explicitly adopted by the Fund in its "Withdrawal Liabiltiy Rules."[4] Waste Management's November 29 letter clearly provides that the company "initiates arbitration of its withdrawal liability dispute with the Teamsters-Employers Local 945 Pension Fund [], pursuant to 29 C.F.R. 4221.3. A."[5]

The Fund does not contest that the November 29 letter constituted the initiation of arbitration under PBGC regulations. Instead, the Fund argues that the parties' subsequent agreement to proceed under AAA rules required Waste Management to initiate arbitration according to AAA regulations.[6]

---

[4] See Hoffman Decl., Ex. E at 12 ("The arbitration shall be initiated and conducted in accordance with regulations promulgated by the Pension Benefit Guaranty Corporation").

This Court may consider the Fund's "Withdrawal Liability Rules" and Waste Managements November 29, 2010 letter on this motion to dismiss as the documents are integral to and incorporated by reference in the pleading. See In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426.

[5] Hoffman Decl., Ex. D.

[6] This Court notes that there is a dispute of fact as to whether the parties agreed to proceed under AAA rules for all purposes or merely for the selection of an arbitrator. Each side submits documents in support of its position. The Fund relies upon the December 2010 e-mail exchange between the parties in which Waste Management, in response to the Fund's suggestion, indicated that "AAA is fine," and the Fund responded that "[a]s Waste Management is the party interested in initiating arbitration over the partial withdrawal liability assesment, it would be appropriate for Waste Management to commence a proceeding with the AAA." Davis Decl., Ex. E, F. Waste Management counters that its e-mail to the AAA informed the AAA that Waste Management and the Fund had "jointly agreed to use AAA procedures for selection of an

The Fund provides no case law in support of the proposition that Waste Management – having timely initiated arbitration pursuant to the Fund's Withdrawal Liability Rules – was then required to initiate arbitration a second time. Instead, the Fund relies on 29 C.F.R. § 4221.14, which provides that "[i]n lieu of the [PBGC] procedures prescribed by this part, an arbitration may be conducted in accordance with an alternative arbitration procedure approved by the PBGC....[T]he parties may agree to the use of a PBGC-approved procedure in a particular case."[7] 29 C.F.R. § 4221.14(a). The Regulations go on to indicate that "[i]f an arbitration is conducted in accordance with a PBGC-approved arbitration procedure, the alternative procedure shall govern all aspects of the arbitration," with certain exceptions not directly applicable here. 29 C.F.R. § 4221.14(b). These provisions merely permit consenting parties to proceed with an arbitration according to alternate rules. Nothing in these provisions requires that this Court obviate the progress the parties in this case made before they reached agreement as to those alternate rules.

Operating Engineers' Pension Trust Fund v. Fife Rock Products Company, No. 10-697 (SI), 2011 U.S. Dist. LEXIS 9045 (N.D. Cal. Jan. 24, 2011), is on point. There, Fife, an employer under ERISA, requested initiation of arbitration of the assesed withdrawal liability in a letter. After the letter was sent, and following failed settlement negotiations, the parties agreed to use AAA rules "in any future arbitration proceeding." Id. at *3. After the Fund filed a claim

---

arbitrator in the withdrawal liability dispute..." Hoffman Decl., Ex. F. This dispute is not appropriate for resolution on a motion to dismiss. However, this Court need not reach this dispute of fact in deciding the instant motion.

[7] The PBGC has approved the AAA rules as an alternative arbitration procedure. See 50 Fed. Reg. 38046 (Sept. 19, 1985).

with the AAA, and Fife failed to respond by the appropriate deadline, the Fund terminated the AA proceeding and attempted to collect the withdrawal liability assesed.  Id.  The court found that Fife had initiated arbitration pursuant to the PBGC regulations and that the parties' subsequent agreement to adopt AAA rules did not require a second initiation under those rules.  Id. at *7-13.  The court wrote:

> [T]here is nothing in ERISA Section 4221 or the regulations that require a party to initiate arbitration pursuant to the AAA rules in order to 'initiate' arbitration under ERISA. The cases in which courts have held that the failure to initiate an arbitration with AAA constituted a failure to 'initiate' arbitration under ERISA Section 4221 have done so where the trust funds' rules specifically required the employer to initiate arbitration pursuant to AAA rules....
>
> The fact that Fife agreed to the AAA rules for the arbitration hearing does not mean that Fife agreed to, or was bound by, the AAA rules for the purpose of determining whether Fife 'initiated' arbitration under ERISA Section 4421.

Id. at *12-13.  Similarly, here, Waste Management initiated arbitration under the applicable rules, then subsequently entered into an agreement to proceed with the already-initiated arbitration under AAA rules.

      Furthermore, to suggest that Waste Management's first initiation of the arbitration was inadequate – and should lead to imposition of the assessed liability on Waste Management without further inquiry – is inconsistent with the intent of the MPPAA, which is predicated upon a preference for arbitration of such disputes.  See 29 U.S.C. § 1401(a); Doherty, 16 F.3d at 1390 (noting "the expressed congressional preference for arbitration under the MPAA, and that arbitration promotes judicial economy."); Flying Tiger Line, 830 F.2d at 1248-49 (3d Cir. 1987) ("Congress clearly designed MPPAA so that court will be the final forum for dispute resolution, and MPPAA's purposes would be undermined by the expense and delay that would be involved

if litigation occurred prior to the Act's dispute resolution procedures. Accordingly, we again emphasize the importance of the legislature's decision that arbitration, and not the courts, is the proper forum for the initial resolution of disputes under MPPAA.") (internal quotations omitted).

Accordingly, this Court finds that even taking all of the facts alleged in the Complaint as true, Waste Management timely initiated arbitration under the rules applicable at the time, and Plaintiff does not plausibly state a claim for relief.

## **CONCLUSION**

Therefore,

**IT IS** on this 2nd day of June, 2011, hereby

**ORDERED** that Defendant's Motion to Dismiss the Complaint is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Cross-Motion to Stay the Arbitration is **DENIED** as moot.

The Clerk of the Court is directed to terminate the motion (Dkt. No. 10) and to close the case.

/s/ **Faith S. Hochberg**
Hon. Faith S. Hochberg, U.S.D.J.